# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CRE NIAGARA HOLDINGS, LLC, CLUB EXPLORIA, LLC, and CRE NIAGARA PARTICIPATION HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RESORTS GROUP, INC.,<br>Defendant. | C.A. No. N20C-05-157 PRW CCLD |
| CRE NIAGARA HOLDINGS, LLC, CLUB EXPLORIA, LLC, and CRE NIAGARA PARTICIPATION HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RESORTS GROUP, INC.,<br>Defendant. | C.A. No. 2021-0953-PW |

Submitted: March 1, 2023
Decided:  March 24, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Resorts Group, Inc.'s Superior Court Motion to Dismiss for Lack of Subject Matter Jurisdiction and Superior Court Motion for Partial Judgment on the Pleadings,*
**DENIED.**

*Upon Defendant Resorts Group, Inc.'s Court of Chancery Motion to Dismiss for Lack of Subject Matter Jurisdiction,*
**GRANTED.**

*Upon Plaintiffs CRE Niagara Holdings, LLC, et al.'s Court of Chancery Motion for Partial Summary Judgment on Counts III and IV,*
**DENIED AS MOOT.**

Richard P. Rollo, Esquire, Travis S. Hunter, Esquire, Dorronda R. Bordley, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; J. David Washburn, Esquire, Charles L. Perry, Esquire, KATTEN MUCHIN ROSENMAN LLP, Dallas, Texas; David A. Crichlow, Esquire, Brian L. Muldrew, Esquire, KATTEN MUCHIN ROSENMAN LLP, New York, New York, *Attorneys for Plaintiffs CRE Niagara Holdings, LLC, Club Exploria, LLC, and CRE Niagara Participation Holdings, LLC.*

Garvan McDaniel, Esquire, HOGAN MCDANIEL, Wilmington, Delaware; David S. Rosner, Esquire, Ronald R. Rossi, Esquire, Paul J. Burgo, Esquire, Stephen P. Thomasch, Esquire, Jed I. Bergman, Esquire, KASOWITZ BENSON TORRES LLP, New York, New York, *Attorneys for Defendant Resorts Group, Inc.*

**WALLACE, J.**

The Plaintiffs originally filed this action in the Superior Court on May 18, 2020. Shortly thereafter, the Plaintiffs filed an Amended Complaint, asserting claims against the Defendant for (1) fraudulent inducement, (2) breach of contract/indemnification, and (3) declaratory relief. The dispute centers around one primary agreement, two ancillary agreements, and a supplemental agreement.

In April 2021, the Court issued a decision denying the Defendant's motion to dismiss the Amended Complaint. Thereafter, the Defendant filed an Answer, Counterclaims, and a Third-Party Complaint (that also was later amended) asserting claims against Third-Party Defendants on eleven grounds. In May 2022, the Court issued a second decision denying in part and granting in part the motions to dismiss the Counterclaims and Third-Party Complaint, as well as denying the Defendant's motion to stay.

The Defendant has filed a Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction and for Partial Judgment on the Pleadings relating to Plaintiff's declaratory judgment claim. That Motion is now ripe for decision.

Relatedly, the same Plaintiffs filed a Complaint against the same Defendant in the Court of Chancery (that also was later amended) and asserts claims for specific performance and anticipatory repudiation, and seeks three declarations. The Defendant has filed a Motion to Dismiss the Chancery Amended Complaint. That

Motion, too, is now ripe for decision. Additionally, the Plaintiffs have filed a Motion for Partial Summary Judgment relating to two of the declaratory judgment claims. That Motion is also now ripe for decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts here are taken from the Superior Court action's Amended Complaint[1] and the Court of Chancery action's Amended Complaint.[2] The facts overlap and will be discussed together. As there are two previously-issued decisions from the Superior Court action,[3] the Court will only provide a brief recitation of the facts here.

### A. THE PARTIES

Plaintiffs CRE Niagara Holdings, LLC ("CRE Niagara"); Club Exploria, LLC, a successor by merger to CRE Bushkill Group, LLC; and CRE Participation Holdings, LLC (collectively, "CRE" or "Plaintiffs") are Delaware LLCs.[4] CRE

---

[1] Plaintiffs' Superior Court Amended Complaint ("SAC"), Sept. 15, 2020 (D.I. 40 Super.). The Superior Court action is N20C-05-157 PRW CCLD. Any document identifier number from this action will be distinguished by the designation "Super."; for example, (D.I. 40 Super.).

[2] Plaintiffs' Court of Chancery Amended Complaint ("CAC"), June 7, 2022 (D.I. 35 Ch.). The Court of Chancery action is captioned 2021-0953 PW. Any document identifier number from this action will be distinguished by the designation "Ch."; for example, (D.I. 35 Ch.).

[3] *CRE Niagara Hldgs., LLC v. Resort Groups, Inc., LLC*, 2021 WL 1292792 (Del. Super. Ct. Apr. 7, 2021) (denying Defendant's Motion to Dismiss); *CRE Niagara Hldgs., LLC v. Resort Groups, Inc.*, 2022 WL 1749181 (Del. Super. Ct. May 31, 2022) (denying, in part, and granting, in part, Plaintiffs'/Third-Party Defendants' Motion to Dismiss, and denying Defendant's Motion to Stay).

[4] SAC ¶¶ 5-7.

-2-

Niagara and Club Exploria, LLC are also citizens of Pennsylvania and have members who are citizens there.[5] Defendant Resorts Group, Inc. ("RGI" or "Defendant") is a Pennsylvania corporation with its principal place of business in East Stroudsburg, Pennsylvania.[6] Before the transaction at the center of this controversy occurred RGI owned timeshare resorts in Pennsylvania.[7]

## B. THE UNDERLYING TRANSACTION

On May 19, 2017, RGI and CRE Niagara entered into a Unit and Asset Purchase Agreement (the "UAPA"), through which CRE Niagara acquired the assets of the Pennsylvania timeshare resorts and ownership of specified entities, including CRE Bushkill Group, LLC.[8] CRE Niagara purchased the timeshare business and existing timeshare contracts, and RGI retained the right to the payment stream under those contracts.[9] There are four agreements to the transaction: (1) the UAPA;[10] (2) the Servicing Agreement, which addressed the servicing of receivables from sales by RGI;[11] (3) the Participation Agreement, which provided CRE an interest in the receivables collected by RGI from the Servicing Agreement (the Servicing and

---

[5] *See id.* ¶ 10.

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 13.

[8] *Id.* ¶¶ 15-16.

[9] *See id.* ¶¶ 23-25.

[10] *See id.* ¶ 16.

[11] *See id.* ¶ 25.

Participation Agreements are the "Ancillary Agreements");[12] and (4) the Supplemental Agreement, which supplemented the Servicing and Participation Agreements.[13] The Ancillary Agreements were executed on May 18, 2017.[14] The Supplemental Agreement was executed on December 28, 2018.[15]

### C. SUPERIOR COURT PROCEDURAL HISTORY

Eventually, a dispute arose between the parties regarding RGI selling timeshares, pre-transaction, to "less creditworthy" purchasers, which CRE believes was contrary to the representations and warranties made by RGI in the UAPA.[16] In May 2018, RGI sent CRE a letter asserting that CRE's collected funds didn't meet scheduled benchmarks, but CRE denied such shortfall and instead blamed RGI for its alleged misrepresentations.[17]

CRE filed the current Superior Court action on May 18, 2020.[18] The same day, RGI filed an action in the United States District Court for the Southern District of New York asserting breach-of-contract claims under the agreements.[19] On May

---

[12]  *See id.* ¶¶ 17, 23.

[13]  *See id.* ¶ 43 n.5.

[14]  *Id.* ¶ 17.

[15]  *Id.*, Ex. J.

[16]  *See id.* ¶¶ 28-30; *CRE Niagara Hldgs., LLC*, 2021 WL 1292792, at *1-2.

[17]  *See* SAC ¶¶ 29-31, Ex. D, Ex. E.

[18]  *See* Complaint ("Compl."), May 18, 2020 (D.I. 1 Super.).

[19]  *See* Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Partial Judgment on the Pleadings ("Def.'s Super. MTD") at 6, Aug. 15, 2022 (D.I. 156 Super.).

19, 2020, RGI filed an action in the United States District Court for the District of Delaware.[20] In August 2020, both federal actions were dismissed for lack of diversity.[21]

In July 2020, RGI filed a motion to dismiss CRE's Complaint in the Superior Court action.[22] In August 2020, RGI filed an amended motion to dismiss, or, in the alternative, to stay the Superior Court action.[23] In September 2020, CRE filed the current Amended Complaint, asserting claims for fraudulent inducement (Count I), breach of contract/indemnification (Count II), and a declaratory judgment (Count III).[24] Count III is at issue now. Count III seeks a declaration that "there is no subsisting claim by RGI for any default of [sic] breach by any Plaintiff of the UAPA, the Servicing Agreement and/or the Participation Agreement," and that Club Exploria "is entitled to terminate the Servicing Agreement and/or is not restricted or obligated by" a schedule attached to the agreements.[25] In October 2020, RGI filed a motion to dismiss the Amended Complaint, or, in the alternative, to stay the action thereunder.[26] In that motion, RGI sought to dismiss Amended Complaint Counts I

---

[20]   *Id.* at 6-7; SAC ¶ 10.

[21]   Def.'s Super. MTD at 7; SAC ¶¶ 10-11.

[22]   *See* Defendant's First Motion to Dismiss, July 8, 2020 (D.I. 11 Super.).

[23]   *See* Defendant's Am. First Motion to Dismiss or Stay, Aug. 7, 2020 (D.I. 28 Super.).

[24]   *See* SAC ¶¶ 62-87.

[25]   *Id.* ¶ 87.

[26]   *See* Defendant's Second Motion to Dismiss or Stay, Oct. 15, 2020 (D.I. 46 Super.).

and II under Rule 12(b)(6), dismiss the portions of Counts I and III relating to the Servicing Agreement and Participation Agreement for improper venue, and dismiss or stay the entire action under the doctrine of *forum non conveniens*.[27]

In April 2021, the Court issued a decision denying RGI's motion in full.[28] The following is a brief summary of that decision. The Court found the UAPA's forum selection clause applies and the parties waived any objection to an inconvenient forum.[29] This was in response to RGI's argument that the Ancillary Agreements' forum selection clause chose New York, so any non-UAPA claims must be litigated there.[30] But, the Court found the UAPA was later-executed and its Delaware forum selection clause governed.[31] The Court also found that Counts I and II survived RGI's timeliness challenges.[32] Shortly thereafter, the Court denied RGI's motion for reargument.[33]

In June 2021, RGI filed its Answer with Affirmative Defenses and

---

[27] *See id.* at 11-35.

[28] *See CRE Niagara Hldgs., LLC*, 2021 WL 1292792.

[29] *See id.* at *11.

[30] *See id*. at *4.

[31] *Id.* at *5-7.

[32] *See id.* at *10.

[33] *CRE Niagara Hldgs., LLC v. Resort Groups, Inc., LLC*, 2021 WL 2110769 (Del. Super. Ct. May 25, 2021).

Counterclaims, and a Third-Party Complaint.[34]  In September 2021, RGI amended this filing as it relates to the Counterclaims.[35]  Also in September 2021, CRE and the Third-Party Defendants filed two motions to dismiss RGI's Third-Party Complaint.[36]  In February 2022, RGI filed a renewed motion to stay the non-UAPA claims in the Superior Court action in light of related litigation in New York state court.[37]  In May 2022, the Court issued a Letter Order resolving the above-mentioned motions.[38]  The Court held in pertinent part that RGI's breach-of-contract claim under the UAPA survived dismissal,[39] but its claims under the Servicing Agreement and Participation Agreement were dismissed with prejudice based on RGI's representations to the Court.[40]  Namely, RGI maintained its non-UAPA claims should be litigated in New York in compliance with those agreements' forum selection clauses, and that RGI proffered them in the Superior Court action only to preserve the claims in the event they were thrown out in New York.[41]  The Court

---

[34]  *See* Defendant's Answer with Affirmative Defenses and Counterclaims and Third-Party Complaint, June 9, 2021 (D.I. 81 Super.).  The Third-Party Complaint is not highly relevant for the purposes of the current motions, so it will not be discussed in detail.

[35]  *See* Defendant's Answer with Affirmative Defenses and Amended Counterclaims and Third-Party Complaint, Sept. 1, 2021 (D.I. 92 Super.).

[36]  *See* D.I. 95 Super.; D.I. 96 Super.

[37]  *See* Defendant's Renewed Motion to Stay, Feb. 4, 2022 (D.I. 126 Super.).

[38]  *See CRE Niagara Hldgs., LLC*, 2022 WL 1749181.

[39]  *See id.* at *5.

[40]  *See id.*

[41]  *See id.* at *9.

noted that the New York Supreme Court held the non-UAPA claims belong in New York, and the Court dismissed RGI's non-UAPA claims with prejudice.[42] Additionally, the Court denied RGI's motion to stay its non-UAPA claims.[43] In July 2022, CRE filed its Answer to RGI's Amended Counterclaim.[44]

## D. NEW YORK COURT PROCEDURAL HISTORY

On August 12, 2020, a day after the United States District Court for the Southern District of New York dismissed RGI's non-UAPA claims, RGI filed its complaint in the Supreme Court of New York (the "New York Action").[45] That complaint asserts claims against CRE for, *inter alia*, breach of the Servicing Agreement and Participation Agreement.[46] In February 2021, RGI amended its complaint in the New York Action[47] and asserted claims against CRE (and others) for, *inter alia*, breach of the Servicing Agreement, the Participation Agreement, the UAPA, and the Supplemental Agreement.[48] In December 2021, the New York Supreme Court issued a decision on CRE's (and other defendants') motion to

---

[42] *See id.* at *9-10.

[43] *See id.* at *10.

[44] *See* Plaintiff/Counterclaim Defendants' Answer to Amended Counterclaim, July 12, 2022 (D.I. 146 Super.).

[45] *See* Def.'s Super. MTD at 7.

[46] *See id.*

[47] *See id.* at 7, Ex. 7 (displaying a copy of RGI's amended complaint in the New York Action).

[48] *See id.*, Ex. 7 ¶¶ 283-332.

dismiss the New York Action.[49]  The New York court dismissed RGI's claims against CRE under the UAPA because of "the broad Delaware forum selection clause contained in that agreement."[50]  The New York court did not dismiss the Servicing Agreement and Participation Agreement claims because those agreements "contain broad mandatory New York forum selection clauses applicable to all claims related to these agreements."[51]

### E. Court of Chancery Procedural History

On November 5, 2021, CRE filed its complaint in the Court of Chancery, asserting claims against RGI for specific performance under the Servicing Agreement and Participation Agreement, and anticipatory repudiation.[52] Simultaneously, CRE submitted a motion for entry of a status quo order for the purpose of "prohibiting [RGI] from unilaterally dispersing disputed funds to itself in the very near future."[53]  RGI opposed the motion.[54]  The Court granted CRE's

---

[49]  *See* Letter for Judicial Review, Ex. A ("New York Action Dec. 27 Decision"), Dec. 30, 2021 (D.I. 109 Super.).

[50]  *Id.*, Ex. A at 2.

[51]  *Id.*, Ex. A at 3.  The New York Court also made other findings with respect to RGI's other claims, but those are not particularly relevant for the present motions here.  *See generally id.*, Ex. A.  On February 28, 2023, the Supreme Court of New York, Appellate Division affirmed the New York Action Dec. 27 Decision in full.  *See* Letter for Judicial Review, Ex., Mar. 1, 2023 (D.I. 177 Super.).

[52]  *See* Verified Complaint, ¶¶ 32-51, Nov. 5, 2021 (D.I. 1 Ch.).

[53]  *See* Plaintiffs' Motion for Entry of a Status Quo Order at 1, Nov. 5, 2021 (D.I. 1 Ch.).

[54]  *See* Defendant's Opposition to the Motion for Entry of a Status Quo Order, Mar. 8, 2022 (D.I. 19 Ch.).

motion for entry of a status quo order.[55]  Later, CRE filed its current Amended Complaint in the Court of Chancery action, asserting five claims: specific performance (Count I), anticipatory repudiation (Count II), declaratory judgment regarding UAPA § 8.5(a) (Count III), declaratory judgment regarding UAPA § 8.7 (Count IV), and breach of the UAPA (Count V).[56]

## F. Current Superior Court and Chancery Motions

RGI filed its current Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Partial Judgment on the Pleadings (the "Superior Court Motion to Dismiss"), relating to CRE's declaratory judgment claim (Count III).[57]

Between the Opposition and Reply filings, CRE sent a letter to the Court regarding "material development[s]" in the New York Action.[58]  The letter stated that RGI filed an "emergency motion" in the New York Action, seeking to enjoin CRE from further pursuing: "(1) parts of the [Superior Court] Action . . . ; (2) [the Court of Chancery] Action Counts I-II . . . , and Counts III-IV . . . ; and (3) CRE's motion for summary judgment on [the Court of Chancery] Action Counts III-IV."[59]

---

[55]  *See* Order Governing Accounting & Resolving Status Quo Motion, Apr. 28, 2022 (D.I. 32 Ch.) (granting CRE's Motion).

[56]  *See* CAC ¶¶ 45-85.

[57]  *See* Def.'s Super. MTD.

[58]  *See* Letter for Judicial Review ("New York Action Development Letter") at 1, Sept. 30, 2022 (D.I. 166 Super.).

[59]  *Id.*

In September 2022, the New York Supreme Court submitted an order for CRE to show cause why the New York Supreme Court should not enjoin CRE from pursuing claims in Delaware for the claims that are related to the agreements with New York forum selection clauses.[60]

In November 2022, CRE sent a follow-up letter to the Court.[61] The letter stated the New York Supreme Court denied RGI's motion to enjoin CRE.[62] The New York Supreme Court's Order stated that court would not issue the anti-suit injunction RGI requested.[63] The New York Supreme Court's reasoning was primarily premised on the fact that this (Delaware) Court has "extensive knowledge" of the complex issues of this litigation and has been mindful of the impact of the overlapping claims.[64] The New York Supreme Court also criticized the parties for the "poor [contract] drafting decisions that resulted in multi-forum litigation."[65] In essence, the New York Supreme Court deferred to this Court to decide the merits of the issues in the first instance.[66]

---

[60] *See id.*, Ex. B (displaying a copy of the New York Supreme Court's Order).

[61] *See* Letter for Judicial Review ("New York Action Development Letter Update"), Nov. 17, 2022 (D.I. 170 Super.).

[62] *Id.*, Ex. at 1.

[63] *Id.*, Ex. at 1.

[64] *Id.*, Ex. at 1.

[65] *Id.*, Ex. at 2.

[66] *Id.*, Ex. at 2.

Concerning the Court of Chancery action, RGI filed its Motion to Dismiss the Amended Complaint (the "Chancery Motion to Dismiss"),[67] seeking to dismiss the Amended Complaint in full.[68] CRE filed its Opposition to the Chancery Motion to Dismiss.[69] Contemporaneously, CRE filed its Motion for Summary Judgment on Counts III and IV (the "Chancery Motion for Summary Judgment").[70]

## II. LEGAL STANDARD

### A. SUBJECT MATTER JURISDICTION UNDER SUPERIOR COURT RULE 12(b)(1)

"A party may move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction."[71] "Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."[72] When the Court considers a Rule 12(b)(1) motion, "the Court need not accept [a plaintiff's] factual allegations as true and is free to consider facts not alleged in the complaint."[73] "The movant 'need only show that the Court lacks

---

[67] *See* Defendant's Motion to Dismiss ("Def.'s Ch. MTD"), Aug. 15, 2022 (D.I. 39 Ch.).

[68] *See id.* at 15-38.

[69] *See* Plaintiffs' Answering Brief ("Pls.' Ch. Answering Br."), Sept. 22, 2022 (D.I. 43 Ch.).

[70] *See* Plaintiffs' Motion for Summary Judgment ("Pls.' Mot. for Summ. J."), Sept. 22, 2022 (D.I. 43 Ch.). Plaintiffs filed one, omnibus brief for their Opposition to Defendant's Chancery Motion to Dismiss and their Opening Brief in support of their Chancery Motion for Summary Judgment.

[71] *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *5 (Del. Super. Ct. Sept. 29, 2021) (citing Del. Super. Ct. Civ. R. 12(b)(1)).

[72] Del. Super. Ct. Civ. R. 12(h)(3); *see also Blue Cube Spinco LLC*, 2021 WL 4453460, at *5.

[73] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (internal quotation marks and citation omitted); *Nelson v. Russo*, 844 A.2d 301, 302 (Del. 2004) ("In

-12-

jurisdiction,'"[74] but "the non-movant bears the 'far more demanding' burden 'to prove jurisdiction exists.'"[75] "A motion to dismiss challenging jurisdiction of the subject matter based on lack of ripeness is properly considered under Rule 12(b)(1)."[76]

## B. JUDGMENT ON THE PLEADINGS UNDER SUPERIOR COURT RULE 12(c)

When a party moves under Rule 12(c) for judgment on the pleadings, "the Court accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-movant."[77] The Court will grant a 12(c) motion only when, after drawing all reasonable inferences in favor of the non-moving party, "no material factual dispute exists and the movant is entitled to judgment as a matter of law."[78]

"The standard for a motion for judgment on the pleadings is almost identical

---

deciding whether the Superior Court has subject matter jurisdiction . . . [the Court] must look beyond the language in the complaint.").

[74] *Blue Cube Spinco LLC*, 2021 WL 4453460, at *5 (quoting *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Ct. Dec. 15, 2015), *aff'd*, 2016 WL 4938890 (Del. Sept. 16, 2016)).

[75] *Id.* (quoting *Appriva*, 937 A.2d at 1284 n.14 (internal quotation marks omitted)).

[76] *Benefytt Techs., Inc. v. Capitol Specialty Ins. Corp.*, 2022 WL 16504, at *5 (Del. Super. Ct. Jan. 3, 2022) (citing *Energy Transfer Equity, L.P. v. Twin City Fire Ins. Co.*, 2020 WL 5758027, at *5 (Del. Super. Ct. Sept. 28, 2020)); *B/E Aerospace, Inc. v. J.A. Reinhardt Hldgs., LLC*, 2020 WL 4195762, at *2 (Del. Super. Ct. July 21, 2020)).

[77] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Ct. Aug. 16, 2021) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993)).

[78] *Id.* (citing Del. Super. Ct. Civ. R. 12(c)).

to the standard for a motion to dismiss."[79] The Court thus accords a plaintiff opposing a Rule 12(c) motion the same benefits as a plaintiff opposing a Rule 12(b)(6) motion.[80] Given the similarity between a 12(c) motion and a 12(b)(6) motion, "the Court engages certain 12(b)(6) procedures during 12(c) review,"[81] such as considering "documents outside the pleadings"[82] that are "integral to and incorporated referentially into them."[83]

## III. PARTIES' CONTENTIONS

### A. SUPERIOR COURT ACTION CONTENTIONS

RGI contends that CRE's declaratory judgment claim (Count III) should be dismissed to the extent Count III concerns the Ancillary Agreements and the Supplemental Agreement.[84] RGI offers two primary reasons for its contention. First, RGI claims that litigating Count III in this Court is "unnecessary" and would result in "duplicative litigation and risk inconsistent judgments."[85] Specifically, RGI

---

[79] *Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014) (internal quotation marks and citation omitted).

[80] *Intermec IP Corp.*, 2021 WL 3620435, at * 8 (citing *Alcoa World Alumina LLC v. Glencore Ltd.*, 2016 WL 521193, at * 6 (Del. Super. Ct. Feb. 8, 2016), *aff'd sub nom.*, *Glencore Ltd. v. St. Croix Alumina, LLC*, 2016 WL 6575167 (Del. Nov. 4, 2016)).

[81] *Id.*

[82] *Id.* (citing *Jiménez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019), *aff'd*, 2020 WL 4207625 (Del. July 22, 2020)).

[83] *Id.* (citing *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000)).

[84] *See* Def.'s Super. MTD at 11.

[85] *See id.*

-14-

argues that CRE's Count III, as it relates to the Ancillary Agreements and the Supplemental Agreement, mirrors RGI's affirmative claims in New York and, thus, litigating Count III here would risk inconsistent judgments and present overwhelming hardship.[86] Second, RGI claims that Count III should be dismissed as overripe because there is a "simultaneous non-declaratory judgment action" pending in New York.[87] RGI invokes the Superior Court's seven-factors from *Burris v. Cross,*[88] and also relies on the Court of Chancery's decision in *Markusic v. Blum*.[89] RGI claims that in light of these cases, Count III should be dismissed as overripe.

On the other side, CRE argues its declaratory judgment claim is proper in this Court.[90] CRE's attack on RGI's assertions is twofold. First, CRE argues that litigating Count III here is proper under the "law of the case" doctrine.[91] Specifically, CRE claims the Court previously held Count III was properly filed in Delaware due to the language in UAPA Section 9.6.[92] Second, CRE argues RGI's "overripeness" argument fails because Count III "is the only claim related to the

---

[86] *See id.* at 13.

[87] *Id.* at 14.

[88] 583 A.2d 1364 (Del. Super. Ct. 1990).

[89] 2021 WL 2456637 (Del. Ch. June 16, 2021); *see* Def.'s Super. MTD at 14-21.

[90] *See* Plaintiffs' Answering Brief ("Pls.' Super. Answering Br.") at 8, Sept. 22, 2022 (D.I. 164 Super.).

[91] *See id.*

[92] *See id.* at 8-9 (citation omitted)

-15-

[Ancillary Agreements] that is filed in the correct forum based on the plain language of the UAPA."[93]  Additionally, CRE argues *Burris* does not apply, and even if it did, the seven factors weigh in CRE's favor.[94]

## B. COURT OF CHANCERY ACTION CONTENTIONS

In the Chancery Amended Complaint, CRE's Count I seeks "specific performance directing RGI to abide by its contractual commitments under the Servicing Agreement and Participation Agreement" and to pay CRE funds from the Lockbox.[95]  In Count II, CRE claims that RGI anticipatorily repudiated the Servicing Agreement and Participation Agreement and asks for an injunction "prohibiting RGI from disbursing funds from the Lockbox account to itself until Plaintiffs' offset rights are established."[96]  In Count III, CRE seeks a declaration that UAPA Section 8.5(a) limits liability via an indemnification cap.[97]  In Count IV, CRE seeks a declaration that UAPA Section 8.7 limits the types of claims that can be brought by RGI.[98]  And in Count V, CRE alleges RGI breached the UAPA by filing the New

---

[93]  *See id.* at 14.

[94]  *See id.* at 14-20.

[95]  CAC ¶¶ 45-55; *see also id.* ¶ 3 (noting that the Servicing Agreement defines the parameter of the Lockbox Account).

[96]  *Id.* ¶¶ 56-64.

[97]  *Id.* ¶¶ 65-70.

[98]  *Id.* ¶¶ 71-76.

York Action.[99]

RGI moved to dismiss the Amended Complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6).[100] Broadly, RGI argues "[t]he legal and factual issues in Counts I-IV are before the New York court, which ruled it had exclusive jurisdiction over such claims."[101] RGI makes a series of global arguments as applied to all counts. First, RGI claims that *McWane* compels the Court to dismiss or stay this action.[102] Second, RGI argues CRE is collaterally estopped from "attacking the New York court's ruling by arguing that the UAPA, or at minimum, Delaware law, applies to RGI's indemnification claims" because the New York court found the UAPA does not govern the Servicing Agreement or Participation Agreement.[103] Third, RGI argues the claims do not sound in equity and therefore the Court of Chancery lacks subject matter jurisdiction.[104]

## IV. DISCUSSION

### A. RGI'S SUPERIOR COURT RULE 12(b)(1) ARGUMENT FAILS.

RGI believes Count III, as it relates to the Ancillary Agreements and the

---

[99] *Id.* ¶¶ 77-85.

[100] Def.'s Ch. MTD at 1.

[101] *Id.* at 17.

[102] *Id.* at 19-20.

[103] *Id.* at 21-22.

[104] *Id.* at 23.

Supplemental Agreement, should be dismissed under Rule 12(b)(1). RGI asserts dismissal is warranted because the Ancillary Agreements' forum selection clause states New York is the proper forum for claims under those agreements. RGI contends allowing CRE to litigate non-UAPA claims in Delaware runs the risk of duplicative litigation and inconsistent judgments. CRE relies on the "law of the case" doctrine in light of this Court's previous determination that the broad language of UAPA Section 9.6 permits the non-UAPA claims to be heard in this Court.

The law of the case doctrine is a "judicially-created doctrine that prevents parties from relitigating issues[s] that previously have been decided."[105] Under this doctrine, "a court's legal ruling at an earlier stage of proceedings controls later stages of those proceedings, provided the facts underlying the ruling do not change."[106] "Once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless [a] compelling reason to do so appears."[107] The law of the case doctrine "is not inflexible in that, unlike *res judicata*, it is not an *absolute* bar to reconsideration of a prior decision that is clearly wrong, produces an injustice[,] or should be

---

[105] *Zurich Am. Ins. Co. v. Syngenta Crop Protection LLC*, 2022 WL 4091260, at \*3 (Del. Super. Ct. Aug. 24, 2022).

[106] *Nationwide Emerging Managers, LLC v. Northpointe Hldgs., LLC*, 112 A.3d 878, 894-95 (Del. 2015) (citation omitted).

[107] *Zirn v. VLI Corp.*, 1994 WL 548938, at \*2 (Del. Ch. Sept. 23, 1994); *see also Bragdon v. Bayshore Prop. Owners Ass'n, Inc.*, 251 A.3d 661, 677 (Del. Ch. 2021) (citing *Zirn*, 1994 WL 548938, at \*2).

revisited because of changed circumstances."[108] "This Court has held: 'A party seeking to have the Court reconsider the earlier ruling must demonstrate newly discovered evidence, a change of law, or manifest injustice.'"[109]

In April 2021, the Court issued its first of two decisions in this matter. In the April 2021 decision, the Court analyzed the competing forum selection clauses of the UAPA—with a Delaware forum selection clause—and the Ancillary Agreements—with their New York forum selection clauses.[110] The Court held that the UAPA's Delaware forum selection clause governed disputes arising from the UAPA and the Ancillary Agreements for two reasons. First, RGI conceded "CRE's affirmative claims are based on an alleged breach of representations and warranties set forth in the UAPA."[111] Second, the UAPA is the later-executed document, and UAPA Section 9.6's "plain language itself includes the Ancillary Agreements within its forum selection clause."[112] The Court, therefore, held Delaware was the proper forum for CRE's claims.[113]

In May 2022, the Court issued its second decision and dismissed RGI's non-

---

[108] *Hamilton v. State*, 831 A.2d 881, 887 (Del. 2003) (emphasis in original) (internal quotation marks and citations omitted).

[109] *Zurich Am. Ins. Co.*, 2022 WL 4091260, at *3 (quoting *E.I du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. Ct. 1995)).

[110] *See CRE Niagara Hldgs., LLC*, 2021 WL 1292792, at *5-7.

[111] *See id.* at *6.

[112] *See id.* at *7.

[113] *See id.*

UAPA claims with prejudice.[114]  The Court never reached CRE's Rule 12(b)(6) arguments on RGI's non-UAPA claims because "RGI's own representations to this Court [were] sufficient to bar each claim."[115]  Namely, RGI represented that it filed non-UAPA claims in this Court, even though it believed those claims belonged in New York, just in case the New York court dismissed them.[116]  The Court noted the New York court agreed RGI's non-UAPA claims must be litigated in New York,[117] and then the Court held RGI to its representations and dismissed RGI's non-UAPA claims based on those representations.[118]

Here, RGI argues "if anything, CRE's argument is barred by the law of the case" in light of the Court's May 2022 decision.[119]  RGI's reasoning is that the necessary inference to be drawn from that decision is RGI's claims were dismissed to avoid duplicative litigation and inconsistent judgments.[120]  Not so.  Rather, the Court dismissed RGI's non-UAPA claims based on RGI's representations that it filed those claims in Delaware only as a safety net if the New York court dismissed

---

[114] *See CRE Niagara Hldgs., LLC*, 2022 WL 1749181, at *9-10.

[115] *See id.* at *9.

[116] *See id.*

[117] *See id.*

[118] *See id.* at *10.

[119] Defendant's Reply Brief ("Def.'s Super. Reply") at 8-9, Oct. 13, 2022 (D.I. 167 Super.).

[120] *Id.* at 9.

RGI's non-UAPA claims in New York.[121]  It does not follow that CRE's non-UAPA claims must be dismissed under Rule 12(b)(1) based on the law of the case.  Indeed, the opposite is true—the Court previously held Delaware is the proper forum for certain non-UAPA claims because (1) RGI conceded CRE's affirmative claims are based on breaches set forth in the UAPA, and (2) UAPA Section 9.6 encompassed certain claims under the Ancillary Agreements.[122]

Additionally, there has been no "newly discovered evidence, a change of law, or manifest injustice" since the Court issued its two previous decisions.  Any perceived injustice derives *solely* from the parties' own tactical decisions and representations, not from any of the multiple courts that have dealt with this morass.  Any risk of "duplicative litigation" or "inconsistent judgments" is a result of the parties' tactical decisions, which have already unnecessarily burdened multiple courts.  The New York Supreme Court said it best in denying RGI's request for an anti-suit injunction: "While it would have made more sense for the parties to expressly bargain to only litigate in one court (and equal sense to pick one now), they have only themselves to blame for their poor drafting decisions that resulted in

---

[121] *See CRE Niagara Hldgs., LLC*, 2022 WL 1749181, at *9 ("The Court need not reach CRE's arguments that [RGI's non-UAPA] claims fail on their merits, as advanced in its 12(b)(6) Motion. Instead, RGI's own representations to this Court are sufficient to bar each claim."); *see also id.* at *10 ("RGI represented that it filed its Amended Counterclaims and Third-Party Complaint just in case the New York court determined those claims belong in Delaware.  The New York court didn't.").

[122] *See CRE Niagara Hldgs., LLC*, 2021 WL 1292792, at *6-7.

multi-forum litigation."[123]

Simply put, if anything, the law of the case dictates that CRE's Count III is properly in Delaware. RGI's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**.

## B. RGI's SUPERIOR COURT RULE 12(c) ARGUMENT FAILS.

RGI's next basis to dismiss Count III is that it's "overripe."[124] RGI argues Count III is overripe because RGI pleaded an affirmative, non-declaratory claim in New York, which makes CRE's Count III overripe under *Burris* and *Markusic*.[125] RGI argues that the seven-factors set out in *Burris* control, and when the Court analyzes these factors, judgment in RGI's favor is proper.[126] CRE counters that the overripeness argument fails because Count III still serves a practical and useful purpose especially when it's the only claim related to the Ancillary Agreements in this Court.[127] CRE believes *Burris* is inapposite for several reasons,[128] and that even if *Burris* applies, the factors weigh in favor of denying RGI's Motion.[129]

As an initial matter, the term "overripe" as used in this context appears in only

---

[123] New York Action Development Letter Update, Ex. at 2.

[124] *See* Def.'s Super. MTD at 14.

[125] *See id.* at 14-15; Def.'s Super. Reply at 12-13.

[126] *See* Def.'s Super. MTD at 15-21.

[127] *See* Pls.' Super. Answering Br. at 13-14.

[128] *See id.* at 14-17.

[129] *See id.* at 17-20.

six Delaware cases: *Burris*, both previously-published decisions in this case, *Markusic*, and two other Superior Court cases. Put differently, there aren't many decisions discussing this doctrine.

"The basic purpose of the Declaratory Judgment Act is to enable the court to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance to [a] stage at which a matter is traditionally justiciable."[130] A declaratory judgment is intended to "promote preventive justice,"[131] but it's not "a means of eliciting advisory opinions from courts."[132] The Court has discretion to grant or deny a declaratory judgment,[133] but the Court cannot exercise this discretion unless there is an "actual controversy."[134] An actual controversy exists if all of the following elements are met:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between the parties whose interests are real and adverse; [and] (4) the issue involved in the controversy must be ripe for judicial

---

[130] *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591-92 (Del. 1970) (citation omitted); *see also* DEL. CODE ANN. tit. 10, § 6501 (2023).

[131] *Stabler v. Ramsay*, 88 A.2d 546, 551 (Del. 1952), *adhered to on reh'g*, 89 A.2d 544 (Del. 1952).

[132] *Ackerman v. Stemerman*, 201 A.2d 173, 175 (Del. 1964) (citing *Stabler*).

[133] *See* DEL. CODE ANN. tit. 10, § 6506 (2023); *Sec. Nat'l Mortg. Co. v. Lehman Brothers Hldgs. Inc.*, 2016 WL 6396343, at *6 (Del. Super. Ct. Aug. 24, 2016).

[134] *See Gannett Co., Inc. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 840 A.2d 1232, 1237 (Del. 2003); *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216-17 (Del. 2014).

determination.[135]

Here, the parties don't really contest the first three elements. Instead, the fourth element—ripeness, or to be more exact, overripeness—is at issue.

RGI asks the Court to dismiss Count III as overripe citing *Markusic* and *Burris*. RGI tells the Court that it need not engage in the longer *Burris* analysis because *Markusic* states: "The court need not engage in the [*Burris*] analysis . . . . Where non-declaratory claims are pending in another court, the declaratory version of those same claims are overripe and risk the unnecessary burdening on the court's resources and possibility of inconsistent factual and legal findings between the courts."[136] While *Markusic* was recently affirmed by the Delaware Supreme Court,[137] the Court here would be remiss if it rested its decision on *Markusic* without engaging in the *Burris* analysis.

The Superior Court in *Burris* set out seven factors to consider whether a claim should be dismissed as overripe:

1. Whether the defendant is truly an unwilling litigant, thus necessitating declaratory action.

2. What form of relief is truly being sought by the plaintiff and whether that relief, if not solely a declaration of rights, would require resort to another court for supplemental relief. If so,

---

[135] *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662-63 (Del. 1973).

[136] *See Markusic*, 2021 WL 2456637, at *5; Def.'s Super. MTD at 14-15.

[137] *Markusic v. Blum*, 2022 WL 4451486 (Del. Sept. 23, 2022) (affirming the Court of Chancery's decision without a separate opinion).

whether both the rights and relief could be attained in a single non-declaratory action already available.

3. Whether another remedy exists and whether it would be more effective or efficient and, thus, whether declaratory judgment would serve a useful purpose.

4. Whether another action is pending, instituted either before or after the instant action, at the time of consideration of the Motion to Dismiss, and whether plaintiff would be able to raise all claims and defenses available in the instant action, as part of the pending action.

5. Whether the instant action has truly been instituted to seek a declaration of rights or merely for tactical or other procedural advantage.

6. Whether the instant action was filed in apparent anticipation of other pending proceedings.

7. Whether plaintiff will suffer any prejudice if the instant action is dismissed.[138]

Application of the *Burris* factors is appropriate here. In *E.I. Dupont De Nemours & Co. v. Huttig Building Products*,[139] the Superior Court declined to engage in the *Burris* analysis because it determined the defendant effectively "cast a cloud" upon the contract at issue by filing a second action in California a month after the Delaware action was instituted.[140] On the other hand, in *Security National*

---

[138] *Burris*, 583 A.2d at 1372-73.

[139] 2002 WL 32072447 (Del. Super. Ct. May 28, 2002).

[140] *See id.* at *4-5.

*Mortgage Company v. Lehman Brothers Holdings Inc.*,[141] the Court engaged in the *Burris* analysis.[142] There, this Court determined "the parties ha[d] moved far forward to litigate the claim" because they were actively pursuing litigation in the United States Bankruptcy Court for the Southern District of New York.[143] The present case is more like *Lehman Brothers* than *Huttig Building Products* because RGI is actively pursuing similar claims in New York, which were originally filed less than one day after CRE initiated this action.[144] As such, it's proper to engage in the *Burris* analysis.[145]

### Factor One: RGI is a willing litigant.

RGI is a willing litigant. RGI initially brought an action in the Southern District of New York within a day of the filing of this action. Though later dismissed for lack of diversity, RGI proceeded with the New York Action shortly thereafter in state court. Further, on March 30, 2020, less than two months before the lawsuits started, RGI sent a default notice to CRE, suggesting that CRE "preserve documents

---

[141] 2016 WL 6396343 (Del. Super Ct. Aug. 24, 2016).

[142] *See id.* at *8-11.

[143] *Id.* at *8.

[144] *See* Declaration of Paul Burgo ¶ 2, Aug. 15, 2022 (D.I. 156 Super.) ("On May 18, 2020, RGI filed a complaint in the United States District Court for the Southern District of New York, asserting claims for breach of contract under the Servicing, Participation, and Supplemental Agreements."); *see also* Compl. (having a filing date of May 18, 2020).

[145] *See Sec. Nat'l Mortg. Co.*, 2016 WL 6396343, at *8.

in view of potential litigation."[146] CRE argues RGI is "active" but "unwilling" because RGI does not want to litigate in Delaware.[147] That misses the point. This factor asks whether the party is a willing litigant as it relates to the causes of action generally, not in a specific court.[148]

**Factor Two: CRE is seeking declaratory relief under Count III.**

Count III seeks a declaration that:

[T]here is no subsisting claim by RGI for any default of [sic] breach by any Plaintiff of the UAPA, the Servicing and/or Participation Agreement. This includes a declaratory judgment that there is no default or breach as asserted by RGI . . . and that Club Exploria (as successor by merger to CRE Bushkill) is entitled to terminate the Servicing Agreement and/or is not restricted or obligated by Schedule 2.[149]

The relief sought by CRE here could also be sought in the New York Action because RGI has advanced affirmative claims that CRE (and others) breached the UAPA, Ancillary Agreements, and Supplemental Agreement.[150] The Court previously held, however, that Delaware is the proper forum for this lawsuit because

---

[146] SAC, Ex. I at 4.

[147] *See* Pls.' Super. Answering Br. at 17.

[148] *See Burris*, 583 A.2d at 1373 (explaining the defendant was a willing litigant because it was actively pursuing a lawsuit in the Court of Chancery); *Sec. Nat'l Mortg. Co.*, 2016 WL 6396343, at *8 (explaining the defendant was a willing litigant because it was actively pursuing claims in the United States Bankruptcy Court for the Southern District of New York).

[149] SAC ¶ 87.

[150] *See* Def.'s Super. MTD, Ex. 7 ¶¶ 283-332 (asserting claims by RGI against CRE for breach of these agreements).

-27-

the UAPA's Delaware forum selection clause governs the UAPA and the Ancillary Agreements.[151] So, while it is plausible CRE could seek the same relief in the New York Action, the law of the case holds "[t]his Court is the proper forum for CRE's suit."[152] There is an affirmative claim in New York that mirrors the declaratory judgment action here, but the Court has already held that this Court is the proper forum for CRE's lawsuit, which includes the declaratory judgment action. Therefore this factor is neutral.

**Factors Three and Four: CRE's Count III claim may serve a useful purpose, but CRE could likely raise its claims and/or defenses in the New York Action.**

Considering the Court's prior decision, Count III serves a useful purpose inasmuch as it permits CRE to pursue its claims under the UAPA and Ancillary Agreements in accordance with the Court's holding that Delaware is the proper forum for CRE's suit. On this ground, factor three favors CRE.

CRE argues the New York court determined the UAPA is governed by a Delaware forum selection clause, and thus CRE would not be able to raise all claims and defenses available in the New York Action.[153] But this assertion appears conclusory, as RGI points out—"CRE [] fails to explain what defenses from the

---

[151] *See CRE Niagara Hldgs., LLC*, 2021 WL 1292792, at *6-8.

[152] *See id.* at *7.

[153] *See* Pls.' Super. Answering Br. at 19.

UAPA it could possibly rely on in litigating its claims that it did not breach the [Ancillary] Agreements, nor does it explain why it would be unable to assert them defensively in New York."[154]   Because CRE has yet to provide an adequate explanation as to why it wouldn't be able to raise the appropriate claims or defenses in the New York Action, factor four favors RGI.

> **Factors Five and Six: This action may have been initiated to seek a declaration of rights, but it may also have been filed in anticipation of the New York Action.**

CRE claims, and the Court must accept at this stage, it filed this action in accordance with the UAPA's forum selection clause.[155]   RGI paints a different picture.  RGI says CRE filed this action for tactical advantage shortly after RGI sent CRE notices of default on the Ancillary Agreements.  RGI points to CRE's Motion for Summary Judgment in the Chancery action and says CRE believes Delaware law on indemnification and willful misconduct is more advantageous.[156]   But, if anything, that argument goes to the Chancery action and RGI fails to directly connect it to the Superior Court action.  The argument, therefore, is not persuasive and factor five favors CRE.

RGI claims it is the "natural plaintiff" and CRE filed this action in anticipation

---

[154]  Def.'s Super. Reply at 15.

[155]  *See* Pls.' Super. Answering Br. at 19.

[156]  *See* Def.'s Super. Reply at 16 (citing Pls.' Ch. Answering Br. at 20-21).

of the New York Action. RGI points to certain caselaw for the proposition that "[s]eeking a declaratory judgment prior to the natural plaintiff bringing an action can be viewed as 'filing in anticipation' of litigation."[157] RGI says it's the natural plaintiff because CRE's damages, at most, make up a "small offset of RGI's much larger damages."[158] CRE argues this action was not anticipatorily filed because, in its view, it had to file or it would have faced a "timeliness" challenge under the agreements if it did not file.[159] It does appear CRE filed this action in anticipation of litigation based on the "natural plaintiff" argument by RGI, as well as the fact that RGI's damages, if proven, are significantly greater than CRE's damages.[160] For these reasons, factor six favors RGI.

**Factor Seven: CRE would be prejudiced if this action is dismissed.**

RGI argues CRE will suffer no prejudice if the non-UAPA portions of Count III are dismissed because CRE can pursue those in the New York Action.[161] In briefing and at argument, CRE countered that it would suffer prejudice if Count III was dismissed because the New York Action's decision was on appeal to the New

---

[157] *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, 2014 WL 703808, at *4 (Del. Super. Ct. Feb. 17, 2014).

[158] *See* Def.'s Super. Reply at 16-17.

[159] *See* Pls.' Super. Answering Br. at 19-20; *see also* Def.'s Super. Reply at 16 n.13 (noting the UAPA timeliness limitations period expired a year before CRE filed in Delaware).

[160] *See* Def.'s Super. Reply at 17 n.16 (explaining the possible damages disparity).

[161] *See* Def.'s Super. MTD at 20-21.

York Appellate Division, which could have found all claims must be brought in Delaware.[162] The New York Appellate Division issued no such decision.[163] But also, says CRE, dismissal would deprive it of the bargain it struck through the UAPA.[164] CRE is correct—it likely will be deprived of its bargain struck through the UAPA if Count III is dismissed because the Court previously held the UAPA, with its Delaware forum selection clause, covers the Ancillary Agreements. This factor favors CRE.

Factors one, four, and six favor RGI. Factors three, five, and seven favor CRE. Factor two is neutral. Weighing the factors (some of which are more substantial than others) and viewing the facts in the light most favorable to CRE, the Court **DENIES** RGI's Motion to Dismiss Count III for overripeness.

## C. CHANCERY COUNTS I AND II LACK AN EQUITABLE BASIS AND THE COURT WILL NOT RETAIN JURISDICTION OVER THE ACTION.

The Court of Chancery, one is oft-reminded, "is proudly a court of limited jurisdiction"[165] that enjoys subject matter jurisdiction "only when (1) the complaint

---

[162] *See* Pls.' Super. Answering Br. at 20.

[163] *See* Letter for Judicial Review, Ex., Mar. 1, 2023 (D.I. 177 Super.) (unanimously affirming the New York Action Dec. 27 Decision in full, which held UAPA claims properly belong in Delaware).

[164] *See* Pls.' Super. Answering Br. at 20.

[165] *Citizens Against Solar Pollution v. Kent Cnty.*, 2023 WL 2199646, at *2 (Del. Ch. Feb. 24, 2023); *Nask4Innovation Sp. Z.o.o. v. Sellers*, 2022 WL 4127621, at *3 (Del. Ch. Sept. 12, 2022); *Parseghian v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *5 (Del. Ch. June 21, 2022); *Perlman v Vox Media, Inc.*, 2019 WL 267520, at *4 (Del. Ch. June 27, 2019).

states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law[,] or (3) Chancery is vested with jurisdiction by statute."[166] "An adequate remedy at law is one that will 'afford the plaintiff full, fair, and complete relief.'"[167] "Plaintiff bears the burden of establishing the court's subject matter jurisdiction."[168]

"Although specific performance is an equitable remedy upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief."[169] "The fact that a complaint contains a prayer for an equitable remedy, without more, does not conclude the jurisdictional analysis."[170] "[T]he appropriate analysis requires a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate."[171]

CRE asserts the Court of Chancery has jurisdiction because the claims seek

---

[166] *S'holder Rep. Servs. LLC v. DC Cap. P'rs Fund II, L.P.*, 2022 WL 439011, at *2 (Del. Ch. Feb. 14, 2022) (internal quotation marks and citation omitted).

[167] *Alliance Compressors LLC v. Lennox Indus. Inc.*, 2020 WL 57897, at *3 (Del. Ch. Jan. 6, 2020) (quoting *El Paso Nat'l Gas Co. v. TransAmerican Nat'l Gas Corp.*, 669 A.2d 36, 39 (Del. 1995)).

[168] *DC Cap. P'rs Fund II, L.P.*, 2022 WL 439011, at *2 (citations omitted); *Alliance Compressors LLC*, 2020 WL 57897, at *3 ("The party seeking an equitable remedy has the burden to show that a legal remedy would be inadequate." (quoting *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2004 WL 1192602, at *2 (Del. Ch. May 28, 2004)).

[169] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[170] *Id.*

[171] *Id.* (internal quotation marks and citation omitted).

equitable remedies.[172]  Specifically:

> Counts I and II seek specific performance (an equitable remedy) of RGI's contractual obligations under the Servicing and Participation Agreements to distribute funds held in the Lockbox account to CRE Participation, and injunctive relief prohibiting distribution of funds held in the Lockbox account to RGI until Plaintiffs' offset rights are established.[173]

Additionally, CRE argues an adequate remedy at law is lacking because it's unclear whether money damages would make it whole.[174]  Specifically, CRE asserts that "RGI has no business operations or other assets that it could use to satisfy a judgment—so if RGI steals funds that should otherwise go to Plaintiffs, it is unlikely, if not impossible, that Plaintiffs could ever recover those funds."[175]

In April 2022, the Court granted the parties' stipulation and order governing accounts and resolving the Status Quo Motion.[176]  That Order provided, in part:

1.  On the first business day of each calendar month, RGI shall pay CRE Niagara Participation Holdings LLC an amount equal to 33.06% of RGI's Swept Timeshare Contract Payments during the prior month.

2.  On the first business day of each calendar month, RGI shall pay an amount equal to 16.94% of RGI's Swept Timeshare Contract Payments during the prior month into the trust account of Kasowitz Benson Torres LLP. The amounts held in such escrowed trust account shall only be distributed as ordered by this Court, by another court of competent jurisdiction following entry of final

---

[172]  Pls.' Ch. Answering Br. at 35-36.

[173]  *Id.* (citation omitted).

[174]  *Id.* at 36.

[175]  *Id.* (citation omitted).

[176]  Order Governing Accounting & Resolving Status Quo Motion, Apr. 28, 2022 (D.I. 32 Ch.).

judgment (including any appeal), or by mutual written agreement of RGI and CRE Niagara Participation Holdings LLC.[177]

CRE's fear that RGI could unilaterally distribute funds from the Lockbox is addressed by the Court's Order.[178] And the disputed 16.94% sits in escrow until final resolution of both the Chancery *and* Superior Court actions. So the entry of the Status Quo Order effectively moots CRE's argument that an adequate remedy at law did not exist.[179] While CRE continues to argue that the "Status Quo Order simply ensures the funds are available for taking, not who is entitled to take" and "[a]lthough the Lockbox Funds are currently stored in escrow, there remains a very real and immediate controversy as to who owns the rights to the disputed 16.94%,"[180] both statements cut against the need for equitable relief. Accordingly, the specific performance claims lack an equitable basis.

The Court of Chancery has the ability to retain jurisdiction even after finding

---

[177] *Id.* ¶¶ 1-2.

[178] CRE asserts that equitable relief is necessary because it's likely that RGI cannot satisfy an eventual judgment. Pls.' Ch. Answering Br. at 36-37. But such a circumstance arises only in the narrow instances where there are "serious questions about defendants' ability to pay a damage award." *Brinati v. TeleSTAR, Inc.*, 1985 WL 44688, at *4 (Del. Ch. Sept. 3, 1985) (citations omitted). For example, such a circumstance may arise in the dissolution or liquidation context. *Id.* at *1, *4; *In re Cencom Cable Income P'rs, L.P. Litig.*, 2000 WL 130629, at *1, *7-9 (Del. Ch. Jan. 27, 2000). That is not the case here.

[179] *See, e.g., Bauer v. Gilpin*, 1994 WL 469220, at *2 (Del. Ch. Aug. 11, 1994) ("With respect to plaintiffs' complaint for specific performance, I conclude that the record demonstrates unequivocally that the complaint has been effectively mooted by the parties entering into a stipulation.").

[180] Pls.' Ch. Answering Br. at 38.

the seemingly equitable claims lack an equitable basis.[181]  But such retention is wholly discretionary.[182]  Factors for the Court to consider when determining whether to retain jurisdiction include, for example, whether retaining jurisdiction would avoid a multiplicity of suits, to promote judicial efficiency, and to avoid extra expense.[183]  The Court finds those efficiencies weigh against retaining jurisdiction.

Accordingly, RGI's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED**.  Because the Court lacks jurisdiction to hear the action, CRE's Motion for Partial Summary Judgment is **DENIED** as **MOOT.**

## V.  CONCLUSION

For the foregoing reasons, RGI's Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction and for Partial Judgment on the Pleadings is **DENIED** in full.

Because the Court of Chancery lacks jurisdiction over the Chancery Amended

---

[181] *Zeborski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *9 (Del. Ch. Apr. 30, 2014). The exercise of that discretion, via the clean-up doctrine, "can be appropriate for 'any of several reasons, including to resolve a factual issue which must be determined in the proceedings; to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law.'" *Id.* (quoting *Darby Emerging Mkts. Fund, L.P. v. Ryan,* 2013 WL 6401131, at *8 (Del. Ch. Nov. 27, 2013)).  Here, judicial efficiency and avoiding multiplicity of suits counsel against retaining jurisdiction.

[182] *Id.*; *Biegler v. Underwriting Serv. Mgmt. Co., LLC*, 2022 WL 17820533, at *5 (Del. Ch. Dec. 20, 2022) ("While this Court retains the power to decide those claims under the cleanup doctrine, it may decline to exercise that jurisdiction where, as here, this Court has not made any factual determinations." (citation omitted)).

[183] *Zeborski*, 2014 WL 2156984, at *9.

Complaint, the Motion to Dismiss the Chancery Amended Complaint is **GRANTED** subject to CRE's right to transfer the action to the Superior Court under 10 *Del. C.* § 1902 (which might be done via appropriate amendment of its operative pleadings there). As the Court lacks jurisdiction, it cannot hear the merits of CRE's Motion for Partial Summary Judgement on Counts III and IV. Accordingly, CRE's Motion for Partial Summary Judgment is **DENIED** as **MOOT**.

CRE has sixty days to elect to transfer the Chancery action to the Superior Court (or amend the necessary pleadings that are already-extant therein to effect a *de facto* transfer).[184] If CRE does not move this Court to transfer the action (or file the amendments that it deems necessary) within that time, that action will be dismissed but with final judgment thereon withheld until such time as the stipulated status quo order is no longer necessary.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

---

[184] DEL. CODE ANN. tit. 10, § 1902 (2023) (noting that a party adversely affected may transfer to the appropriate court "within 60 days after the order denying the jurisdiction of the first court has become final," and that Section 1902 "shall be liberally construed to permit and facilitate transfers of proceedings between the courts of this State in the interests of justice").